IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIARA SMART, Administratrix of the )        No. 2:15-cv-00953
Estate of FRANK J. SMART, JR., Deceased, )
                                        )        Magistrate Judge Cynthia Reed Eddy
                                        )
                                        )
                     Plaintiff,         )
                                        )
           v.                           )
                                        )
CORIZON, INC., CORIZON HEALTH,          )        **JURY TRIAL DEMANDED**
INC., ALLEGHENY COUNTY JAIL and         )
ORLANDO HARPER,                         )

                     Defendants.

## AMENDED COMPLAINT

AND NOW comes the Plaintiff, TIARA SMART, Administratrix of the Estate of FRANK
J. SMART, JR., deceased, by and through her attorneys, George M. Kontos, Esquire, Katie A.
Killion, and KONTOS MENGINE LAW GROUP, and files the following Amended Complaint:

1.      Plaintiff, Tiara Smart, is an adult individual who has been appointed Administratrix

of the Estate of Frank J. Smart, Jr. (hereinafter sometimes referred to as "Mr. Smart"), deceased, by

the Register of Wills of Allegheny County, Pennsylvania.  She has an address at 912 Memory

Lane, Pittsburgh, PA 15219.

2.      Plaintiff's decedent, Frank J. Smart, Jr., was born on August 5, 1975 and died on

January 4, 2015.

3.      Defendant Corizon Health, Inc. is a Delaware corporation or other business entity

with a principal place of business located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee

1

37027.

4.      Defendant Corizon, Inc. is a Missouri corporation or other business entity with a principal place of business located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee 37027.

5.      Defendants Corizon, Inc. and Corizon Health, Inc. (hereinafter collectively referred to as "Corizon") are engaged in the business of providing health care and services on a contract basis to Allegheny County and Allegheny County Jail, and at all relevant times hereto did in fact provide such health care services to inmates/detainees at said Jail.

6.      Defendant, Allegheny County, is a municipality and exists pursuant to the laws of the Commonwealth of Pennsylvania.

7.      At all times relevant, Defendant Corizon was doing business, including contracting for the provision of health services and providing health services to inmates of Allegheny County Jail, as agent of the County of Allegheny in Allegheny County, Pennsylvania, which services were wholly or partially paid for by the County of Allegheny.

8.      At all relevant times hereto, and upon information and belief, Plaintiff avers that defendant Orlando Harper was an agent of the County acting in the course and scope of his employment and engaged in the performance of his duties as the Warden for the Allegheny County Jail.

9.      Upon information and belief, the County of Allegheny owned, possessed, was in control of, and/or was responsible for the operation of the Allegheny County Jail.

10.      The right to bring these actions is conferred upon the Plaintiff by virtue of the operation of the following laws:

(a)      Provisions of the Wrongful Death Act, 42 Pa. C.S.A. §8301, and amendments thereto;

2

      (b)     Provisions of the Survival Act, 42 Pa. C.S.A. §8302, and amendments thereto; and,

      (c)     All other applicable Wrongful Death Acts, Survival Acts, Fiduciary Acts, Statutes and Pennsylvania Rules of Civil Procedure.

11.    This action is brought to recover damages for and on behalf of:

      (a)     Kayona Smart, Daughter;

      (b)     Paris Smart, Daughter;

      (c)     Shatera Smart, Daughter (minor);

      (d)     Frank J. Smart, III, Son (minor);

      (e)     Saniya Smart, Daughter (minor);

      (f)     Kamiya Smart, Daughter (minor);

      (g)     Aljaire Smart, Son (minor); and

      (h)     Kyah Dillard, Daughter (minor).

12.    Plaintiff's decedent did not previously bring an action against the Defendants for damages during his life for the injuries which ultimately resulted in his death.

13.    No other actions for wrongful death of Plaintiff's decedent or for damages for the injuries causing Plaintiff's decedent's death have been commenced against Defendants other than this action.

14.    At all relevant times hereto, the Defendants acted through their agents and employees acting within the course and scope of their agency and/or employment.

15.    On or about January 4, 2015, Frank J. Smart, Jr. was arrested and subsequently incarcerated at the Allegheny County Jail.

16.    Frank Smart, Jr. suffered from chronic epileptic seizures for which he took anti-seizure medication approximately twice daily.   This condition was severe enough to be

potentially fatal to Mr. Smart.

17.     During a previous incarceration, a medical/intake screening was performed by the Jail.  During his previous incarceration, he had received the necessary anti-seizure medication from the jail's medical service provider. As such, Defendants had actual notice as to Mr. Smart's life-threatening condition, as such information would have existed within the Jail's own records.

18.     At the beginning of Mr. Smart's January 4th incarceration, Mr. Smart informed the prison staff that he was in need of medication or else he might suffer a severe grand mal seizure.

19.     The prison staff also has actual notice that if Frank Smart, Jr. suffered a seizure while being physically restrained, he would suffer severe and permanent injuries.

20     Despite the fact that Frank Smart relayed information about his seizure and the need for anti-seizure medication to Corizon and Jail staff, his prior medical records (which were in the possession of both Allegheny County and Corizon) were not accessed, nor was he prescribed anti-seizure medication.

21.     Sometime during the early hours of January 5, 2015, less than a day after being incarcerated, Frank Smart, Jr. suffered a violent grand mal seizure.

22.     During the time that he suffered the seizure, Frank Smart, Jr. was physical restrained in handcuffs and feet shackles.

23.     The severity of the seizure and the physical restraint during the seizure caused Frank Smart, Jr. to suffer catastrophic injuries, for which he was transported to UPMC Mercy Hospital.

24.     Around 12:20 a.m. on January 5, 2015, Mr. Smart was pronounced dead at UPMC Mercy Hospital.

25.     Between his time of incarceration and the fatal seizure on the January 5th, Mr.

Smart and others, on his behalf, repeatedly requested that he be given access to his anti-seizure medication, but all of their requests were ignored.

26.     Upon information and belief, the policy of the Jail and/or Corizon in actual existence at the time of Mr. Smart's incarceration was such that an inmate's prior medical history or record was not timely accessed or reviewed during the intake/screening process – or in a timely fashion thereafter – even with inmates who had indicated and/or evidenced serious medical conditions, such as Mr. Smart.

27.     Despite the fact that the Jail and Corizon had prior knowledge, stemming from the previous incarceration, of the fact that Mr. Smart suffered from a serious medical condition which required medication, absolutely no provision was made by Defendants, or any agent or employee thereof, to provide for Mr. Smart's medical needs, including but not limited to the accessing or reviewing of his prior medical history, accessing or reviewing of Mr. Smart's health records from his previous incarceration, or the ordering of testing to determine whether Mr. Smart was in need of medical care relating to his condition, including prescription/administration of anti-seizure medications.

28.     At all relevant times, Corizon had a history of providing substandard and grossly inadequate medical care to inmates whose medical needs it was contracted to meet.

29.     This history is detailed in excerpts from the "Examination report on Corizon Health Inc.'s compliance with contract #153946 with Allegheny County for the period September 1, 2013 through February 28, 2014" (hereinafter referred to as "the Audit," see attached hereto as Exhibit "A").

30.     The Audit revealed numerous deficiencies in the care being provided by Corizon at the Allegheny County Jail.  Such deficiencies include, but are not limited to:

    A.     Not maintaining the required staffing levels;

B.   Not complying with reporting requirements necessary for the Allegheny County Jail to be accredited by the "National Commission on Correctional Health Care";

C.   Not maintaining complete and accurate inmate medical records, including not implementing the required electronic medical records;

D.   Not conducting intake health assessments for newly-admitted jail inmates;

E.   Not providing inmates with required clinical care;

F.   Not complying with pharmacy management requirements;

G.   Not ensuring the readiness of emergency equipment and supplies;

H.   Not performing the necessary pre-placement health assessments and medical and mental health rounds for inmates in segregation;

I.   Not utilizing the appropriate triage process to prioritize inmate sick call requests;

J.   Not responding to inmate medical grievances in a timely manner; and

K.   Engaging in unfair labor practices.

31.   This recent history reflects systematic violations of inmates' Constitutional rights committed by Corizon, particularly violations of the Fourth, Eighth, and Fourteenth Amendments as further laid out below.

**COUNT I – 42 U.S.C. § 1983**

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
**v.**
**Corizon, Inc. and Corizon Health, Inc.**

32.   Plaintiff incorporates by reference all proceeding paragraphs as though the same were more fully set forth at length herein.

33.   Having taken Mr. Smart into custody, the Defendant, acting under color of law, entered into a special relationship with him, which imposed affirmative duties of care and protection of Mr. Smart and obligated Defendant not to cause injury or harm while he was in the custody and control of the Defendant.

34.    It was the duty of this Defendant, while Mr. Smart was within the care and custody of the County, to provide for his safety and general well-being.

35.    Mr. Smart suffered injuries and damages, as more fully stated below, as a result of defective policies, procedures, practices, customs, directives and/or administrative procedures (hereinafter referred to as "policies") of this Defendant, as follows:

A.    A policy of permitting, encouraging or condoning the inadequate supervision of inmates with serious medical problems such as Frank Smart, Jr. as set forth above;

B.    A policy of failing to require a timely and proper medical examination or care be given to an inmate when an inmate states that they have suffered a serious medical event such as a seizure;

C.    A policy of failing to ensure necessary medications are accessible and given to inmates in a timely fashion.

D.    A policy of failing to ensure procedures are in place to acquire medications immediately in an emergency situation.

E.    A policy of failing to adequately train its agents/employees to detect and properly address medical needs of inmates;

F.    A policy of failing to supervise its agents/employees pertaining to the securing of medical care of inmates;

G.    A policy of failing to require that an inmate's prior medical record be accessed at the time of intake, medical screening process, or when it is made known that an inmate may have an unmet medical need, including but not limited to a need for medication;

H.    A policy of failing to require that inmates receive medical care from competent medical professionals;

I.    A policy of failing to provide adequate training to its agents/employees concerning the proper treatment of inmates with medical emergencies;

J.    A policy of failing to provide an unrestrained safe environment for inmates who suffer seizures while in the jail and/or infirmary.

K.    A policy of failing to be adequately staffed with the sufficient number competent medical professionals, including doctors, to adequately meet and treat inmates' medical needs; and

  L.  Other defective policies concerning the detention of inmates, which may be determined in discovery.

36. The Defendant's conduct stated above evidences reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's decedent in the following particulars:

  A.  Its failure to adequately train, supervise and/or monitor agents and/or employees as set forth above;

  B.  Its failure to correct (through training, discipline, monitoring, policy changes, etc.) its employees' conduct;

  C.  Its failure to investigate and determine whether its agents/employees were complying with its policies, and/or customs, and/or violating inmates' Constitutional rights;

  D.  Its failure to correct defective policies and/or training procedures, despite being put on notice to these defective policies and/or training procedures by recent occurrences similar to the one mentioned above; and

  E.  The intentional act of ignoring the stated communications regarding Plaintiff's decedent's medical needs and its failure to access its own records when the said medical needs were communicated.

37. The above actions of the Defendant were the direct and proximate cause of the injuries sustained to Mr. Smart in that they increased the risk of these injuries occurring, including but not limited to:

  A.  Major seizure;

  B.  Bodily injury from being physically restrained in a prone position;

  B.  Extended pain and suffering; and

  C.  Death.

38. By reason of the aforesaid, Frank Smart, Jr.'s civil rights were violated, including but not limited to those guaranteed under the Eight and Fourteenth Amendments to the Constitution of the United States in the following particulars:

  A.  Mr. Smart's substantive right to be free from cruel and unusual

punishment and to be free from punishment prior to adjudication without due process of law under the Eight and Fourteenth Amendments;

B.   Mr. Smart's rights to procedural due process under the Fourteenth Amendment;

C.   Mr. Smart's substantive constitutional rights guaranteed under the Fourteenth Amendment; and

D.   Mr. Smart's Constitutional rights guaranteed under the Fourth Amendment.

39.   As a result of the above-stated injuries, Mr. Smart suffered the following damages:

A.   Pain, suffering, mental anguish and inconvenience;

B.   Loss of wages, loss of earning capacity.

40.   Plaintiff claims on behalf of the Estate any and all damages to which recovery may be made under § 8301 et al., which include but are not limited to the following:

A.   Decedent's pain, suffering, mental anguish, inconvenience and other such damages that are permitted by law;

B.   Decedent's total estimated future earning capacity;

C.   Decedent's loss of income;

D.   Other financial losses suffered as a result of Decedent's injuries and death;

E.   Any and all expenses incurred by Decedent's Estate.

WHEREFORE, the Plaintiff demands judgment in her favor against Defendants for an amount in excess of the applicable arbitration limit, exclusive of interests and costs.

## COUNT II – PROFESSIONAL NEGLIGENCE/SURVIVAL ACTION

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
**v.**
**Corizon, Inc. and Corizon Health, Inc.**

41.     Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

42.     Plaintiff brings this survival action under 20 Pa. Cons. Stat. Ann. § 3373 and 42 Pa. Cons. Stat. Ann. § 8302.

43.     The negligence, carelessness and/or other liability producing conduct on the part of the Defendants, Corizon, Inc. and Corizon Health, Inc., acting by and through their agents, servants, and/or employees, who were acting within the scope of their employment, consisted of, *inter alia:*

      A.     Failing to ensure that the Decedent underwent a proper medical examination to determine his medical conditions, including his seizure disorder;

      B.     Failing to adequately review the Decedent's prior medical history and records to determine his medical conditions, including his seizure disorder;

      C.     Failing to properly identify and consider the seriousness of the Decedent, Frank Smart's medical conditions, specifically his seizure disorder;

      D.     Failing to immediately assess the Decedent's medication needs relative to his seizure disorder, including but not limited to failing to properly ensure that he received appropriate dose of anti-seizure medication;

      E.     Failing to have the requisite level of medical knowledge to detect and properly address the medical needs of the Decedent;

      F.     Failing to ensure that the Decedent received proper medical care relative to his medical conditions, including but not limited to:

            (i.)     Defendants' failure to appropriately assess and provide adequate

care while Decedent was undergoing any and all phases of seizure;

(ii.)    Failing to ensure that the Decedent did not remain in a face-down position while handcuffed and shackled;

(iii.)   Failing to timely consider and ascertain the full extent and nature Decedent's airway compromise;

(iv.)    Failing to attend to the Decedent when he communicated to the Defendants that he "can't breathe" and when he called out "help";

G.    Failing to ensure that the Decedent received medical care from competent medical professionals;

H.    Failing to provide agents/employees with adequate training with regard to medical emergencies, such as the seizure emergency that the Decedent experienced;

I.    Failing to ensure there were sufficient staffing of employees/agents, including medical professionals, doctors and nurses to adequately access and treat the Decedent's seizure disorder and his subsequent emergency seizure situation.

J.    Failing to oversee staffing of employees/agents, including medical professionals, doctors and nurses;

K.    Failing to ensure by way of policy or protocol that the Decedent's medical issues, including his seizure disorder, were immediately brought to the attention of the medical professionals responsible for patient care; and

L.    Failing to exercise the requisite care and skill in the area Defendants represented that their employees/agents were qualified and trained to render medical care to the Decedent.

44.    As a direct and proximate result of the Defendants' actions/inactions, by and through their respective agents, servants, and/or employees, the Decedent, Frank Smart, suffered and Defendants are liable to Plaintiff for the following damages:

A.    Decedent's pain and suffering between the time of his injuries and the time of death;

B.    Decedent's total estimated future earnings less his estimated cost of

personal maintenance;

C.      Decedent's lost earnings capacity;

D.      Decedent's loss of future benefits, including but not limited to, Social Security income;

E.      Decedent's other financial losses suffered as a result of his death;

F.      Decedent's loss of the enjoyment of life; and

G.      Any/all other damages to which the Plaintiff may be entitled to, whether legal or equitable, in a Survival Action.

WHEREFORE, Plaintiff claims compensatory damages as set forth above in an amount in excess of $75,000.00.

## COUNT III – PROFESSIONAL NEGLIGENCE/WRONGFUL DEATH

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
**v.**
**Corizon, Inc. and Corizon Health, Inc.**

45.      Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

46.      The Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann. § 8301 and Pa. R. C.P. § 2202(a).

47.      The Decedent did not bring an action for personal injuries during his lifetime, and no other action for the death of the Decedent has been commenced against the Defendants.

48.      The negligence, carelessness and/or other liability producing conduct on the part of the Defendants, Corizon, Inc. and Corizon Health, Inc., acting by and through their agents, servants, and/or employees, who were acting within the scope of their employment, consisted of those actions/inactions more fully described above in paragraph 43.

12

49.     As a direct and proximate result of the Defendants' aforesaid actions/inactions, by and through their respective agents, servants, and/or employees, the Defendants are liable and the Plaintiff seeks the following damages:

    A.    Loss of services and contribution of the decedent which she would have rendered during her lifetime;

    B.    Funeral and burial expenses;

    C.    Expenses of Administration of the Estate;

    D.    Medical Expenses;

    E.    Loss of companionship, comfort, society, guidance, solace and protection; and

    F.    Any and all applicable damages under the Wrongful Death Acts, Survival Acts, Fiduciary Acts, statutes and Pennsylvania Rules of Civil Procedure.

WHEREFORE, Plaintiff claims compensatory damages as set forth above in an amount in excess of $75,000.00.


## COUNT IV – CORPORATE NEGLIGENCE/SURVIVAL ACTION

### Tiara Smart, Administratrix of the Estate of Frank J. Smart
### v.
### Corizon, Inc. and Corizon Health, Inc.

50.     Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

51.     The Defendants' employees were responsible for the care and treatment of the Decedent, Frank Smart, and were duly appointed agents, ostensible agents, servants and/or employees of Defendants, Corizon, Inc. and Corizon Health, Inc., and they were acting within the course and scope of their agency and/or employment.

13

52.     The Defendants had a duty under corporate negligence doctrine to ensure, among other duties, that all persons rendering medical care within the Allegheny County Jail, who attended to the care and treatment of Decedent, Frank Smart, comply with the prevailing standard of care in the care and treatment of the Decedent, including the proper administration of seizure medication and the proper medical response to a seizure.

53.     The negligence, carelessness, and/or other liability-producing conduct on the part of the Defendants, their agents, and employees is more fully described above in paragraph 43.

54.     As a direct and proximate result of the aforesaid negligent acts and/or defective policies and procedures of the Defendants, Plaintiff suffered the injuries more fully described above in paragraph 37.

55.     As a direct and proximate result of the aforesaid negligent acts and/or defective policies procedures of Defendants, Plaintiff suffered the damages more fully described above in Paragraph 39 and 40.

WHEREFORE, Plaintiff claims compensatory damages as set forth above in an amount in excess of $75,000.00.

## COUNT V – CORPORATE NEGLIGENCE/WRONGFUL DEATH

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
v.
**Corizon, Inc. and Corizon Health, Inc.**

56.     Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

57.     The Defendants' employees were responsible for the care and treatment of the Decedent, Frank Smart, and were duly appointed agents, ostensible agents, servants and/or employees of Defendants, Corizon, Inc. and Corizon Health, Inc., and they were acting within the course and scope of their agency and/or employment.

58.     The Defendants had a duty under corporate negligence doctrine to ensure, among other duties, that all persons rendering medical care within the Allegheny County Jail, who attended to the care and treatment of Decedent, Frank Smart, comply with the prevailing standard of care in the care and treatment of the Decedent, including the proper administration of seizure medication and the proper medical response to a seizure.

59.     The negligence, carelessness, and/or other liability-producing conduct on the part of the Defendants, their agents, and employees is more fully described above in paragraph 43.

60.     As a direct and proximate result of the aforesaid negligent acts and/or defective policies and procedures of the Defendants, Plaintiff suffered the injuries more fully described above in paragraph 37.

61.     As a direct and proximate result of the aforesaid negligent acts and/or defective policies procedures of Defendants, Plaintiff suffered the damages more fully described above in Paragraphs 39 and 40.

WHEREFORE, Plaintiff claims compensatory damages as set forth above in an amount in excess of $75,000.00.

## COUNT VI – 42 U.S.C. § 1983

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
**v.**
**Allegheny County**

62.     Plaintiff incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

63.     By taking Frank J. Smart, Jr. into its custody, the Defendant entered into a special relationship with him, which imposed upon Defendant affirmative duties of care and protection of Mr. Smart and obligated said Defendant not to cause injury or harm to Mr. Smart while he was in the custody and control of the Defendant.

64.     Mr. Smart suffered the aforesaid injuries and damages complained of as a result of defective policies, procedures, practices, customs, directives and/or administrative procedures (hereinafter referred to as "policies" or "policy") of the Defendant, Allegheny County, as follows:

> A.     A policy of permitting, encouraging or condoning the inadequate supervision of inmates with serious medical problems such as Plaintiff's Decedent as set forth above;
>
> B.     A policy of failing to require a timely and proper medical examination when an inmate complains of needing seizure medication;
>
> C.     A policy of failing to require a timely and proper medical examination or care be given to an inmate when an inmate states that they have suffered a serious medical event such as a seizure;
>
> D.     A policy of failing to adequately train its correctional officers to detect and address medical needs of inmates;
>
> E.     A policy of failing to supervise correctional personnel pertaining to the securing of medical care of inmates;
>
> F.     A policy of failing to require that an inmate's prior medical record be accessed at time of intake, medical screening process, or when it is made known that an inmate may have an unmet medical need, including but not

limited to a need for medication;

G.      A policy of failing to require an inmate's prior (or current) medical record be accessed when an inmate is receiving medical care in either a clinic or infirmary setting;

H.      A policy of failing to require that inmate's receive medical care from competent medical professionals;

I.      Upon information and belief, a policy permits or encourages certain correctional officers to withhold or refuse appropriate medical intervention in its custody, by failing to properly supervise, reprimand, discipline certain correctional officers who violate the rights of inmates;

J.      A policy failing to provide adequate training to its officers and employees concerning the proper supervision of inmates with medical needs or health problems;

K.      A policy of failing to train its correctional officers to recognize serious medical conditions or problems;

L.      A policy of failing to provide an unrestrained safe environment for inmates who suffer seizures while in the jail and/or infirmary.

M.      Other defective policies concerning the detention of inmates, which may be determined in discovery.

65.      The Defendant's conduct stated above evidences reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's decedent in the following particulars:

A.      Its failure to adequately train, supervise, monitor and/or discipline its Officers and/or employees as set forth above to avoid violations of inmates' constitutional rights;

B.      Its failure to correct (through training, discipline, monitoring, policy changes, etc.) its employees' conduct;

C.      Its failure to investigate and determine whether its officers and/or employees were complying with its policies and/or customs, and/or violating inmates' Constitutional rights;

D.      Its failure to correct defective policies and/or training procedures, despite being put on notice to these defective policies and/or training procedures by recent occurrences similar to the one mentioned above and the Audit; and

E.   The intentional act of ignoring the stated communications regarding Plaintiff's decedent's medical needs and its failure to access its own records when the said medical needs were communicated

66.   The above actions of the Defendant were the direct and proximate cause of Mr. Smart's injuries and death, in that they increased the risk of harm to Mr. Smart, harm which he did in fact sustain and which ultimately led to his death.

67.   By reason of the aforesaid, Frank J. Smart's civil rights were violated, including but not limited to those guaranteed under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States in the following particulars:

A.   Mr. Smart's substantive right to be free from cruel and unusual punishment and to be free from punishment prior to adjudication without due process of law under the Eighth and Fourteenth Amendments;

B.   Mr. Smart's rights to procedural due process under the Fourteenth Amendment;

C.   Mr. Smart's substantive constitutional rights guaranteed under the Fourteenth Amendment; and

D.   Mr. Smart's constitutional rights guaranteed under the Fourth Amendment.

68.   As a result of the Defendant's conduct as aforesaid, Mr. Smart sustained the injuries and damages set forth in Count I above, which are incorporated by references as though more fully set forth herein.

WHEREFORE, the Plaintiff demands judgment in her favor against Defendants for an amount in excess of the applicable arbitration limit, exclusive of interests and costs.

<u>**COUNT VII – 42 U.S.C. § 1983**</u>

**Tiara Smart, Administratrix of the Estate of Frank J. Smart**
<u>**v.**</u>
**Warden Orlando Harper**

69.     Plaintiff hereby incorporates by reference all preceding paragraphs as though set forth more fully at length herein.

70.     At all times relevant hereto, Defendant Harper was an agent of the County acting in the course and scope of his employment and engaged in the performance of his duties as the Warden for the Allegheny County Jail.

71.     At all times relevant hereto, Defendant Harper was acting under the color of law pursuant to his authority as an officer of the Defendant, Allegheny County.

72.     As Warden, Defendant Harper was the commanding officer of all other officers working at the jail, and was responsible for the implementation and promulgation of the policies and customs of the Jail, and was further responsible for the, training, conduct and supervision of the officers and employees of the Jail.

73.     As Warden, Defendant Harper was a policy maker for the Allegheny County Jail, and it was therefore his duty, at all times relevant hereto to see that there were in place, laws, ordinances, policies, procedures, practices, customs, directives and/or other administrative procedures which assured that prisoners taken into custody at the Allegheny County Jail were not deprived of their constitutional rights. It was also his duty to see that such laws, ordinances, policies, procedures, customs, directives and/or other administrative procedures were actually followed by all Jail personnel or contractors.

74.     At all times relevant hereto, Defendant Harper had actual and/or constructive knowledge of the policies and customs set forth above, and that said policies and/or customs deprived and/or violated the constitutional rights of inmates such as the Plaintiff herein, which in

effect constituted a ratification of said conduct by Defendant Harper.

75.    It was the duty of Warden Harper, while Mr. Smart was under his supervision and in his custody, to assume responsibility for his safety and general well-being.  Notwithstanding the aforesaid duty, the Defendant's wrongful acts consisted of the following:

A.    In failing to adequately train, supervise, monitor or discipline officers where the need for more or different training, supervision, monitoring or discipline was obvious;

B.    In failing to correct (through training, discipline, monitoring, policy changes, etc.) Jail employees' conduct; and

C.    In failing to investigate whether the Jail's officers and/or employees were complying with its policies and/or customs, and whether said policies or customs in place were adequate.

76.    The Defendant's conduct constitutes reckless and/or deliberate indifference to the safety, health and constitutional rights of Plaintiff's decedent in the following particulars:

A.    His failure to adequately train, supervise, monitor and/or discipline its officers and/or employees as set forth above to avoid violations of inmates' constitutional rights;

B.    His failure to correct (through training, discipline, monitoring, policy changes, etc.) his employees' conduct;

C.    His failure to investigate and determine whether his officers and/or employees were complying with the policies and/or customs, and/or violating inmates' Constitutional rights; and

D.    The intentional act of ignoring the stated communication regarding Plaintiff's decedent's medical needs and his failure to access the jail's own records when the said medical needs were communicated.

77.    The above actions of the Defendant were the direct and proximate cause of Mr. Smart's injuries and death, in that they increased the risk of harm to Mr. Smart, harm which he did in fact sustain and which ultimately led to his death.

78.    By reason of the aforesaid, Frank J. Smart's civil rights were violated, including but not limited to those guaranteed under the Fourth, Eighth and Fourteenth Amendments to the

Constitution of the United States in the following particulars:

A.    Mr. Smart's substantive right to be free from cruel and unusual punishment and to be free from punishment prior to adjudication without due process of law under the Eighth and Fourteenth Amendments;

B.    Mr. Smart's rights to procedural due process under the Fourteenth Amendment;

C.    Mr. Smart's substantive constitutional rights guaranteed under the Fourteenth Amendment; and,

D.    Mr. Smart's Constitutional rights guaranteed under the Fourth Amendment.

79.    As a result of the Defendant's conduct as aforesaid, Mr. Smart sustained the injuries and damages set forth in Count I above, which are incorporated by references as though more fully set forth herein.

WHEREFORE, the Plaintiff demands judgment in her favor against Defendants for an amount in excess of the applicable arbitration limit, exclusive of interests and costs.

Respectfully submitted,

_s/George M. Kontos,_____
George M. Kontos, Esquire
PA I.D. No. 62712
Katie A. Killion
PA I.D. No. 205203

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA  15222
(412) 709-6162
(412) 904-3820/facsimile
gkontos@kontosmengine.com
kkillion@kontosmengine.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIARA SMART, Administratrix of the Estate of FRANK J. SMART, JR., Deceased, | ) ) ) ) | No. 2:15-cv-00953 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CORIZON, INC., CORIZON HEALTH, INC., ALLEGHENY COUNTY JAIL and ORLANDO HARPER, | ) ) ) ) ) | |
| Defendants. | | |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing

AMENDED COMPLAINT has been served upon the following parties this 15th day of March,

2016 via electronic mail:

| Katie Kenyon, Esquire<br>Meyer, Unkovic and Scott<br>535 Smithfield Street, Suite 1300<br>Pittsburgh, PA  15222<br>KMK@MUSLAW.com<br>*(Counsel for Corizon, Inc. and Corizon Health, Inc.)* | Dennis Biondo, Jr., Esquire<br>Allegheny Law Department<br>300 Fort Pitt Commons building<br>445 Fort Pitt Boulevard<br>Pittsburgh, PA  15219<br>dbiondo@alleghenycounty.us<br>*(Counsel for Allegheny County Jail and Orlando Harper)* |
|---|---|

　_s/George M. Kontos,_____
George M. Kontos, Esquire
PA I.D. No. 62712
KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA  15222
(412) 709-6162